**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-01670-001-TUC-JGZ (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Maria Munoz-Garcia, | |
| Defendant. | |

Before the Court is Magistrate Judge Eric Markovich's Report and Recommendation (R&R) recommending that the District Court enter an order granting Defendant's Motion to Dismiss the Indictment with Prejudice. (Doc 19.) The United States has filed an objection. (Doc. 22.) After an independent review of the parties' briefing and of the record, the Court will overrule the Government's objection and adopt Judge Markovich's recommendation to dismiss the indictment with prejudice.

**STANDARD OF REVIEW**

When reviewing a Magistrate Judge's Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis omitted). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149

(1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Reyna-Tapia,* 328 F.3d at 1121; *Schmidt v. Johnstone,* 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003).

## DISCUSSION

As set forth in the R&R, on May 30, 2019, Defendant Maria Munoz-Garcia was arrested and charged with Possession with Intent to Distribute Cocaine, Methamphetamine, Heroin, and Fentanyl in violation of 21 U.S.C. § 841. The Pretrial Services report recommended that Defendant be released on her own recognizance, noting that Defendant was a 58-year-old legal permanent resident who had resided in Arizona with her children for 30 years, with no criminal history. The report also noted that ICE had placed a detainer on Defendant. At Defendant's detention hearing on June 4, 2019, the Magistrate Judge adopted Pretrial Service's recommendation and ordered Defendant released on her own personal recognizance. Upon release from the custody of the U.S. Marshal, pursuant to the detainer, Defendant was turned over to ICE and transported to immigration custody. On July 10, 2019, Defendant was removed to Mexico. Defendant's arraignment, scheduled for July 12, 2019, was continued to July 26 to enable the parties to determine Defendant's whereabouts (Doc. 11), and then vacated when defense counsel confirmed that Defendant had been deported. (Doc. 12.) Defense counsel subsequently filed the pending Motion to Dismiss the Indictment with Prejudice. (Doc. 13.)

Dismissal of charges "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting,* 461 U.S. 499, 505 (1983) (internal citations and quotations omitted).

In the R&R, Magistrate Judge Markovich concluded that dismissal of the indictment with prejudice was warranted, because after Defendant was released pending trial under the Bail Reform Act (BRA), the Executive Branch was obliged to either abandon the criminal prosecution and proceed with removal, or stay removal and release the Defendant pending custody.  By instead opting to proceed immediately with Defendant's removal, the R&R concluded, the United States government violated her statutory right to be released from custody under the BRA, as well as her Sixth Amendment right to counsel.  The Government objects, arguing that the Immigration and Nationality Act (INA) authorizes the Department of Homeland Security to lawfully detain and remove a defendant who has been released pursuant to the BRA, without consequence in the government's criminal prosecution, and alternatively, that even if such a detention and removal does constitute a violation, dismissal of the indictment with prejudice is an unjustified consequence.

Under the BRA, a court may temporarily detain, for a period of not more than ten days, a person not lawfully admitted to the United States, and "direct the attorney for the Government to notify . . . the appropriate official of the [Department of Homeland Security].[1]  If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of [the BRA], notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings."  18 U.S.C. § 3142(d).  Outside of this provision, the court may not consider the existence of an ICE detainer when determining whether to release the defendant under conditions or detain the defendant pending trial. *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015); *see also United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("a district court must conduct an individualized evaluation that is guided by the factors articulated at 18 U.S.C.

---

[1] The "Immigration and Naturalization Service," referenced in 18 U.S.C. § 3142(d), was abolished pursuant to the Homeland Security Act of 2002. *See Hernandez v. Ashcroft,* 345 F.3d 824, 828 n. 2 (9th Cir. 2003).  Immigration functions were transferred to the agencies within the newly-created Department of Homeland Security ("DHS") and to the Department of Justice ("DOJ"). *Id.*

§ 3142(g). A defendant's immigration detainer is not a factor in this analysis, whether as evidence for or against a finding that the defendant poses a risk of nonappearance."). This is, in large part, because where the government "elect[s] to deliver [an] alien to the United States Attorney's Office for prosecution . . . instead of removing [her] immediately," "the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act." *Santos-Flores*, 794 F.3d at 1091.

A court's decision to release a defendant pending trial despite the existence of an ICE detainer does not necessarily strip ICE of its authority to detain and remove an alien. The Government highlights three out-of-circuit opinions that make this point,[2] by way of arguing that, because ICE may execute a removal proceeding against a defendant out on bond, there is no BRA violation where ICE elects to do so. (Doc. 22 at 7-13.) That ICE may retain the *authority* to remove a defendant out on bond, however, does not necessarily mean that ICE may do so without consequence in the defendant's criminal prosecution—and none of the three cases relied upon by the Government compel a different conclusion. These cases merely hold that the court may lack "the authority to require the Executive to choose which laws to enforce" by issuing an order enjoining ICE from detaining or deporting a defendant. *Soriano Nunez*, 928 F.3d at 247; *see also Veloz-Alonso*, 910 F.3d at 270; *Vasquez-Benitez*, 919 F.3d at 553-54. "If the government," however, by placing a defendant "in immigration detention or removing [her], jeopardizes the district court's ability to try [her], then the district court may craft an

---

[2] *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019) ("ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial"); *United States v. Soriano Nunez*, 928 F.3d 240 (3rd Cir. 2019) (same); *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018) ("the BRA's permissive use of release does not supersede the INA's mandatory detention" authority); *see also United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1176 (D. Or. 2012) ("[I]f the Executive Branch intends to exercise its ICE detainer for the purpose of removing and deporting Mr. Alvarez-Trujillo, it appears that it may well have the legal authority to do so.").

The Government cited a fourth case from the Second Circuit in a Notice of Supplemental Authority, *United States v. Lett*, 944 F.3d 467 (2d Cir. 2019), which adopted an analysis similar to those provided by the Third, Sixth, and D.C. Circuits.

appropriate remedy." *Santos-Flores*, 794 F.3d at 1091; see also *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings.  To the extent that ICE may fulfill its statutory mandates without impairing that purpose of the BRA, there is no statutory conflict and the district court may not enjoin the government's agents.").[3]

Here, as a result of Defendant's removal, her rights under the Speedy Trial Act and relatedly, right to counsel, have been compromised.  Pursuant to 18 U.S.C. § 3161(c)(1), Defendant must be tried within 70 days from the filing date of the information or indictment, or from the date Defendant first appeared before a judicial officer of the court, whichever occurs later.  Here, Defendant appeared on May 31, 2019, and her indictment was returned on June 26, 2019.  Seventy days have long since passed, and, given that the reason for her absence is removal by the government, none of the excludable grounds for delay under § 3161(h) appear to apply.  *See United States v. Resendiz-Guevara*, 145 F.Supp.3d 1128, 1138 (M.D. Fla. 2015) ("any delay also caused by the pending motion also is a result of Defendant's deportation; and therefore such delay should not be excluded from the speedy trial calculation").  Moreover, defense counsel represents that he "has made repeated efforts to establish contact since [Defendant's] removal, all without success." (Doc. 27, pg. 9.)  *See United States v. Lutz*, No. CR-19-692-1, 2019 WL 5892827, at \*5 (D. Ariz. Nov. 12, 2019) (dismissing an indictment with prejudice where defendant was removed following release on bond because he was unable to consult with counsel).  The Sixth Amendment provides that

---

[3] The Government filed a Notice of Supplemental authority highlighting the Eighth Circuit's recent decision in *United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020), in which the circuit affirmed the district court's denial of a motion to dismiss and concluded that "[t]he BRA and INA co-exist."  The Court finds this case largely uninformative, however, because of a material factual distinction.  In *Pacheco-Poo*, the defendant was also ordered released pretrial and taken into custody by ICE, but then pled guilty, preserving his appeal rights, and was sentenced before removal occurred. Here, Defendant is already gone.  The Court, in this Order, does not address what the appropriate outcome would be in a case more factually analogous to *Pacheco-Poo* or to the other cases cited herein, where the basis for the motions to dismiss was simply that the defendants were detained by ICE after being ordered released prior to trial under the BRA.

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." U.S. Const. amend. VI. Without the ability to speak with Defendant, counsel is unable to investigate Defendant's case or to assess the viability of any defenses.

The Government argues that "defendant's removal to Mexico occurred with the defendant's consent," and notes that "[s]he did not seek to remain in the United States" and that "[s]he could have sought release from immigration custody if she could have shown she was not a flight risk," but instead told the immigration judge that she wanted to be deported to Mexico, "contrary to the conditions of release." (Doc. 22, pg. 20.) The implication, the Government argues, is that Defendant "was trying to get to Mexico to avoid criminal consequences," and that this negates any suggestion that Defendant was prejudiced. (*Id.*)[4] On the facts of this case, the Court cannot agree. The Defendant is not present to testify as to her intentions, and the Government has not provided sufficient evidence to persuade the Court that Defendant intended to evade criminal charges by failing to resist a removal proceeding that the executive branch itself initiated against Defendant, rather than that she was confused as to the purpose of her continued detention after the Magistrate Judge's release order, or that she, in fact, sincerely desired medical treatment and saw no alternative other than to be sent to Mexico to get it, notwithstanding that she had lived in the United States for over 30 years with her children. The record does not reflect that Defendant was in communication with her counsel to understand the purpose behind the removal proceedings or the way in which those proceedings intersected with the criminal proceedings against her. In short, the Court concludes that here, counsel's inability to assist with Defendant's defense is result of the Government's decision to remove Defendant following the Magistrate Judge's release order, rather than of Defendant's own volitional act. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) ("We hold that, in the context of § 3142(f)(2), the risk that a defendant

---

[4] Notably, the United States fails to press the fact that in Defendant's removal proceeding, the immigration "judge asked [the] attorney for the government if there were criminal charges pending [against Defendant], to which the attorney responded that she was not sure." (Doc. 17, pg. 3.)

will 'flee' does not include the risk that ICE will involuntarily remove the defendant."); *see also Santos-Flores*, 794 F.3d at 1091 ("As a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition.").

The Magistrate Judge concluded that dismissal with prejudice was appropriate largely because "the government violated the defendant's statutory right to be released from custody under the Bail Reform Act when it chose not to comply with the court's release order and continued to detain the defendant pending trial." (Doc. 19, pg. 7.) This Court adopts the R&R's ultimate recommendation for dismissal because of the prejudice stemming from Defendant's actual removal. As previously stated, whether DHS does or does not have authority under the INA to detain a person for removal proceedings after that person has already been released under the BRA, and whether the United States Attorney's Office does or does not always have the authority or the effective ability to intervene in order to halt a removal proceeding, the fact remains that in this case, as a result of executive branch operation, the Defendant has been deported and is consequently disadvantaged in preparing a defense in her case, jeopardizing this Court's ability to fairly try her.

## CONCLUSION

Accordingly,

IT IS ORDERED that the Report and Recommendation (Doc. 19) is ADOPTED.

IT IS FURTHER ORDERED that the Motion to Dismiss the Indictment (Doc. 13) is GRANTED. The Indictment (Doc. 8) is dismissed without prejudice. The Clerk of the Court is directed to close this case.

Dated this 21st day of April, 2020.

_____
Honorable Jennifer G. Zipps
United States District Judge